# S T A T E   O F   L O U I S I A N A

## PARISH OF ORLEANS

**7476**

SOUTHERN SCRAP MATERIAL COMPANY

versus

LIQUIDATING COMMISSIONERS, CARON-
DELET CANAL & NAVIGATION COMPANY,
In Liquidation,
             and
NEW ORLEANS BREWING COMPANY.

No. 7476,

COURT OF APPEAL.

--------0000000---------

## O P I N I O N

Max Dinkelspiel, Judge.

------------------------------------

Plaintiffs filed their suit in the Civil District Court on July 24, 1913, claiming that they were the owners of a locomotive crane, consisting of one boom, one revolving turn-table foundation (A) frame, weights and extra boom, being a complete locomotive crane, except boiler and engine; and also the owner of the rails on which the said crane rested; that they purchased this property from A. Philbrick, liquidator of the co-partnership of Philbrick, Dunn & Company; that the property was on the premises of the New Orleans Brewing Company, corner of Second and Claiborne streets. They further aver that the Breing Company, acting collusively with the Liquidating Commissioners of the Carondelet Canal & Navigation Company of New Orleans, in Liquidation, attempted to sell and deliver said property to the said Liquidating Commissioners of the Carondelet Canal & Navigation Company, though at the time the said New Orleans Brewing Company knew it had no title to the said property or any part thereof. They allege further that the Liquidating Commissioners of the Canal Company, though repeated demands had been made for said property, refused to turn same over to plaintiffs, the owners; contending, further that the value of the said locomotive crane, as heretofore described, was worth the sum of $1500.00, and that petitioners should have judgment decreeing them to be the owners of the above described property, and the property returned to them in the condition in which the same was when it was removed from the premises, or, in lieu thereof, that, in the alternative, plaintiffs have judgment

in solido against the New Orleans Brewing Company and the Liquidating Commissioners of the Carondelet Canal & Navigation Company of New Orleans in Liquidation, in the sum of $1500.00, together with legal interest from January 14, 1913; that as the Liquidating Commissioners of the Carondelet Canal & Navigation Company have refused to deliver to your petitioners the said dredge and appurtenances, and are using the same, though they are fully aware of the fact that plaintiffs were the true and lawful owners of said property, and that same has been in actual use by the said liquidating Commissioners of the Canal Company since the 1st day of July, 1913, and that said Liquidating Commissioners know that ultimately judgment will be rendered against them decreeing your petitioners to be the owners of the dredge and appurtenances, that said Liquidating Commissioners stop to continue to use the said dredge or appurtenances while these proceedings are pending; that your petitioners are entitled to collect rent for the use of said dredge, at the rate of $80.00 per month during the time that said dredge is in use, from July 1, 1913, until final judgment. Averring further, that in the event said defendants, or either of them, should elect to return to your petitioners the said property unlawfully taken, then petitioners should be entitled to legal interest from January 14, 1913, upon $1500.00, the value of said property, up to and including the date on which the court should decree that said property should be returned to your petitioners.

Plaintiffs further contend that the acts of said defendants constitute a wilful and malicious interference and unlawful taking of your petitioners' property, without color of authority or title, and therefore petitioners should have further judgment, by reason of the wrongful acts of the defendants, in solido, for the further sum of $1,000.00, as punitory damages.

They pray for citation, and for judgment in accordance with the allegations of the petition.

On October 14, 1913, the Liquidating Commissioners, for answer

to the petition, appear and deny the ownership of plaintiffs to the dredge in question, and, in the 4th article of the answer, assert and deny that there was a collusive understanding between the New Orleans Brewing Company and themselves as to any matter, and particularly as to the matter set up in the aforesaid specification; admit that they purchased from the New Orleans Brewing Company, on or about the 21st of February 1913 – the sale being consummated on April 2, 1913, – certain second-hand material, to-wit: one turn-table, one boom, one set of wheels for the said turn-table, for which they paid the Brewing Company, on April 10, 1913, the sum and price of $100.00 cash, and especially averring that they purchased the aforesaid property in good faith, believing the same to be the property of the New Orleans Brewing Company. In answer to the 5th specification of plaintiffs' petition, defendants deny that they bought from the New Orleans Brewing Company, or that they have ever used or had possession of, any of the property described in the aforesaid specification by the plaintiffs, except only the property named in the 4th paragraph heretofore alluded to; and they aver that the property admitted by them in the 4th paragraph of this answer to have been so purchased was purchased by them from the New Orleans Brewing Company in good faith, for a valuable consideration, and has been incorporated as an integral part of the dredge-boat, and could not be separated from the property of defendants, and that plaintiffs are without right or power at law to cause them to so deliver up the aforesaid property, or to do anything more than to pay the value of said property. They further contend that no demand was made upon them to deliver up to plaintiffs any part of said property previous to such property being incorporated as an integral part of said dredge-boat, and they deny plaintiffs' right to demand or cause such delivery to plaintiffs of said property. They further deny that the property in question is worth $1500.00, and aver that same, when purchased from the New Orleans Brewing Company, was not worth more than the sum and price paid for it,

to-wit, $100.00.

Defendants deny, further, that plaintiffs are entitled, in view of the facts hereinbefore stated, to any judgment against them in any sum whatever. They specifically deny that they were aware that plaintiffs were the true and lawful owners of the property described, but they admit that the property has been in use by them since before the first day of July, 1913, for the purposes mentioned, as a part of a dredge, and assert that defendants had a lawful right to use the said dredge without hindrance from either the plaintiffs or anybody else. They deny that plaintiffs are entitled to collect any rent for the use of said dredge; averring further and denying that they had unlawfully taken or were unlawfully using any property belonging to plaintiffs. They deny the value of the property and that plaintiffs are entitled to any judgment against them whatsoever. They deny also that there was a wilful or malicious interference or unlawful taking of plaintiffs' property without color of authority or title, or that plaintiffs are entitled to punitory damages, but aver, on the contrary, that they have acted in good faith.

They go on to recite, as heretofore stated, that in January or February of 1913 they required certain parts of machinery to complete a dredge-boat, which defendants proposed to construct for use in connection with defendants' property, known as the Carondelt Canal and Bayou St. John, and having heard that the New Orleans Brewing Company had such machinery, or parts of machinery, required by them, lying in an open lot at the corner of Claiborne and Second streets in this city, exposed to the wind : weather, apparently abandoned, and to all intents and purposes nothing more or less than second-hand machinery, apparently taken from one of said Brewing Company's plants, and that certain parts of same might be applied to their purposes, that in the month of February they made a proposition to the New Orleans Brewing Company for the purchase of the property described, and subsequently bought same, as stated, for $100.00, from the New Orleans Brew-

295

ing Company, and paid for the same; that subsequently, about
the 5th of March, 1913, before they had removed the said property
from the lot at Second and Claiborne streets, plaintiffs having
notified the Brewing Company that they had bought the said prop-
erty, the said Brewing Company requested the defendants not to
remove the said machinery until they could have the matter straight-
ened out; that on April 2nd. of the same year, having received a
letter dated that day, with a bill attached for the $100.00 cov-
ering the purchase price, they paid the same, and therefore
considered and believed and assert that their title was absolute,
so far as they were concerned.

They pray that if any judgment be rendered in this case against
them, that they call the New Orleans Brewing Company in warranty
to defend any actions or suits, and that whatever judgment be
rendered against them be paid by the Brewing Company.

The New Orleans Brewing Company, on October 15, 1913, after
excepting to the petition as being too vague, general and indef-
inite to enable them to answer, - which exception was overruled,
answered, denying all the allegations of plaintiffs' petition,
in like manner as did the Liquidating Commissioners of the Canal
& Navigation Company, asserting, amongst other things, that the
property consisted of a lot of junk which Philbrick & Dunn, or some
party representing them, placed upon the lot belonging to defendants
at the corner of Claiborne and Second streets, in this city, tempo-
rarily and purely at the sufferance of the defendants, and for
the use of which said parties agreed to pay the Brewing Company
the sum of $2.00 per month rent, and did pay up to and inclusive
of August 9, 1909, but since that date nothing has been paid on
account thereof, although defendants endeavored to collect same,
until they lost sight of all the parties in interest. They al-
lege further that under the law they had a lessor's lien and
privilege, and right of detention and pledge upon the said junk,
but that the value of it was such that a resort to court proceed-

■

ings to sell same under provisional seizure would have been prohibitive in cost, and would not have availed either the defendants as the lessors of said property or the owners at the time, and therefore defendants had a disinterested expert to appraise said property, by personal inspection, and the report was that the same, at maximum, was worth possibly $100.00; that upon the strength of this report, and not having at the time heard from the owners of the junk, they sold to the Canal Company the property in question for the price and sum of $100.00, which was a fair and true -value, and which they intended to hold as an off-set to their claim for the use of the premises since August 9, 1909, at the rate of $2.00 per month, and to tender to said owners, should they ever appear thereafter, the difference in cash; that there was nothing hidden or clandestine in the matter, but the entire transaction was detailed to the Liquidating Commissioners of the Carondelet Canal & Navigation Company, and that defendants have always been willing to make a just, true and equitable settlement with the owners of said junk whenever they should appear. They deny that the Southern Scrap Material Company, plaintiffs, ever bought from the owners the property in question, to their knowledge, or had ever made known to them that they were contemplating a purchase, or at any time attempted to obtain delivery of the property in question; but that plaintiffs waited until after the property was removed from the premises and the lien of respondents for rental was extinguished by prescription before plaintiffs attempted to take any action. They aver that plaintiffs then instituted the present suit for an inflated amount, exceeding twenty-five times the value of the property herein sued for, and attempted thereby to obtain a better legal title than their vendor had; that plaintiffs had ample opportunity to ascertain the true facts, and defendants allege that they did know the true facts, but if they did not they were guilty of the grossest laches and negligence in not having ascertained same, in not attempting to remove the property from the premises, and in not

apprising either the defendants or the liquidating Commissioners of the Carondelet Canal & Navigation Company of their purchase of said property, until, by acts which they superinduced, they got your respondents and the Carondelet Canal & Navigation Company in a position which they would not otherwise have assumed; and for all of which said acts superinduced by said plaintiffs defendants plead estoppel.

----------------

As in all controversies of a similar character, much testimony was taken, pro and con, particularly in reference to the value of the dredge in question. It would be useless and idle to enter into details of what different witnesses for and against have testified to in this case, which has been in court now since 1913.

The plaintiffs have foregone their suit for rent and punitory damages, and insist now that $1500.00 is the amount that they should have judgment for in this case. Several of their witnesses, including Diefenthal, the vice-president of the corporation, have sworn that $1500.00 was a fair market price for what they contend the machinery was worth. They admit that they bought this machinery for $50.00, and, having made a good bargain, as they had a perfect legal right to do, that being a part of the business of the plaintiff company, they see no reason why, under the law and the facts as they believe they have established, they should not obtain judgment for the amount claimed. Some of their witnesses have testified to the value as sted by Mr. Diefenthal; others again valued it at $1100.00 or $1200.00. The fact remains that the New Orleans Brewing Company, who at one time had a lien and privilege for rent, and who sold it for $100.00 to the Carondelet Canal & Navigation Company, had it appraised, and the highest value was from $75.00 to $100.00.

It is established beyond the peradventure of a doubt that this same property had been on a vacant lot at Second and Clai-

borne streets from about the year 1908, exposed to the weather
during all this time, without any claimants; that up to 1909 the
rent was paid, but from that time on to the present not a dollar
of rent had ever been paid to the New Orleans Brewing Company
for keeping this property on their lot. Further than that, plain-
tiffs bought, either in the latter part of December 1912 or the
beginning of January 1913, for $50.00, and after purchasing, know-
ing where the property was located, knowing that the New Orleans
Brewing Company were the owners of the lot in question, they never
made known their ownership until the sale of the property by the
New Orleans Brewing Company and its partial removal by the pur-
chasers, the Carondelet Canal & Navigation Company. They kept
quiet. Why? That is a question for their own determination.
It certainly has not been disclosed in this case. But after the
sale, and the first removal of a part of the machinery, then, and
not until then, through a telephonic communication between an offi-
cer of the plaintiff company and the Brewing Company, was the Brew-
ing Company informed of the ownership by plaintiffs. And the
moment the Brewing Company got this notice, after having sold to
the Carondelet Canal & Navigation Company, as hereinbefore stated,
they immediately notified the vendees of the notice that they had
received from plaintiffs, and the vendees stopped the removal at
once; and not until April following was the dredge finally removed,
when the New Orleans Brewing Company sent their bill to the Navigation
Company for the price agreed upon, to-wit, $100.00.

Upon this statement of facts, as we assert them to be, we
cannot conceive how it is possible, under any circumstances, for
machinery of this character -- call it what you will, junk or
otherwise -- to have the value attempted to be put upon it by
plaintiffs and their witnesses in this cause.

His Honor, the judge of the court a quo, a careful, experienced,
painstaking judge, in his opinion, amongst other things, makes this
statement: "There was considerable evidence showing the valuation
of the property in question. It varies from that of ordinary junk

to $1500.00. Of course, there is considerable doubt in the mind of the court when I fix the amount, but the court is compelled to fix a sum, which it will do at $600.00." And the learned judge gave a judgment against both defendants, in solido, for that sum.

We cannot agree with our learned brother in the sum fixed by him as the value of this# property. On the contrary, we believe that all parties in interest have fixed the price themselves; first, the plaintiffs, purchasing the sum of $50.00, and then the New Orleans Brewing Company, selling it after an appraisement of the sum of $100.00. We can conceive of no better was of arriving at a determination of the value than giving the highest estimate, which we fix at the sum of $100.00.

The judgment appealed from is therefore reversed it is now ordered that there be judgment in favor of plaintiff and against both defendants in solido for the full sum of $100. with legal interest from Judicial demand and the costs of the court a qua, plaintiff to pay all costs of appeal.

It is further ordered that if the Carondelet Canal Co pay this judgment it Have judgment for like amount against the New Orleans Brewing Company.